STEVEN G. KALAR
Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:  (415) 436-7706
Email:  Sophia_Whiting@fd.org

Counsel for Defendant Garcia

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SELVIN GAMEZ GARCIA,<br><br>Defendant. | **Case No.:** CR 19–458 WHO<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Court:**  Courtroom 2, 17th Floor<br>**Hearing Date:**  May 14, 2020<br>**Hearing Time:**  1:30 p.m. |

## INTRODUCTION

Selvin Gamez Garcia is a young immigrant who accepted responsibility for selling $16 worth of cocaine base to an undercover police officer. Mr. Garcia came to the United States as a teenager, looking to fulfil the American dream and provide for his family in Honduras. After spending two-and-a-half months in pre-trial detention at Santa Rita Jail, followed by five months on home detention *without a single violation*, a sentence of three years of probation is appropriate pursuant to U.S.S.G. § 5C1.1(c)(3).[1] Alternatively, the Court should sentence Mr. Garcia to time served.

---

[1] Since the applicable guideline range is in Zone B, the Court may impose probation with a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention. U.S.S.G. § 5C1.1(c)(3).

DEFENDANT'S SENTENCING MEMORANDUM
*GARCIA*, CR 19–458 WHO

1

## BACKGROUND

Mr. Garcia was born on April 27, 1998, in San Ignacio, a small ranching village two hours outside of Tegucigalpa, Honduras. His parents were agricultural workers on a ranch, primarily cultivating beans and maize. The family, including Mr. Garcia, worked hard to obtain basic necessities. He walked 1.5 kilometers to school at six in the morning and returned at one in the afternoon to work for the remainder of the day with his father on the ranch. Despite these difficult circumstances, Mr. Garcia loved school. He completed the school program available in the village when he was just 15 years old. At 15, he moved to the capital, Tegucigalpa, by himself, to continue his education. He moved in with distant relatives so he could attend secondary school at Union Esfuerzo y Democracio to study finance. He studied there for three years and completed his degree. He was 18 when he finished his studies. He wished to continue on to university, but could not afford to. He tried to find a job, but the circumstances in Honduras made this impossible despite his ambition and relatively high educational achievement. After nearly a year of looking for employment, he was completely destitute. While he considered returning to the ranch to take up the agricultural work of his parents, he saw how the work weighed on them yet barely allowed them to survive. He could not support himself and them through agricultural work. He hoped to accomplish more for himself and his family. Like many immigrants before him, he became enamored with the promise of the American dream.

So, still a teenager, Mr. Garcia took the arduous journey north in search of employment. He traveled alone by train and foot for approximately one month. When he finally arrived in the Bay Area, he did his best to find legitimate work. He expected to work menial jobs while he improved his English, but hoped to eventually find stable employment using his finance degree. He first tried to work as a painter, but his lack of experience proved a barrier. He then got a job working full time at Poly-Tek making car parts, earning only approximately $500 per week. He also took on odd jobs to supplement his income, including flyering around neighborhoods and removing old appliances from homes. Despite his efforts, Mr. Garcia could not make ends meet through gainful employment. In addition to his own expenses, he was sending the majority of his income to support his parents in Honduras on a weekly basis. In his desperation, he made the regrettable decision to engage in low-

level drug dealing.

On September 4, 2019, Mr. Garcia sold $16 worth of cocaine base to an undercover police officer. Since he happened to be arrested after the government began their Federal Initiative for The Tenderloin ("FITT"), the government filed a federal indictment charging Mr. Garcia with drug distribution. He was arrested on the federal warrant on September 24, 2019. On December 10, 2019, he was released to his aunt Nely Barahona Diaz's apartment on home incarceration, only permitted to leave for court or medical appointments. He remained on complete lockdown until, on February 27, 2020, he received a small 2.5 hour window on weekdays and 4 hours on Saturdays to run errands for his aunt and transport his young cousins to school.[2]

In five months on home detention *he has not received a single violation*. This is despite sleeping on the couch in his aunt's living room, without any private space. The apartment has two bedrooms, one of which is occupied by his aunt and the other is occupied by his cousin and her two children. Since Mr. Garcia moved in with his aunt, he has focused on rehabilitation and avoiding any future misconduct. He and his aunt have had many conversations about his future and how he will lead a law-abiding life. What he really loves to do is to study. He has therefore spent his time on home detention studying English through free programs like Duolingo. He is also learning how to cook for the family, helping his aunt clean, caring for the children, and exercising. He feels incredibly guilty that he put himself and his family in this position, but he has also matured significantly over the past year.

## DISCUSSION

### I.     The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))

Mr. Garcia agrees with the government and U.S. Probation that the applicable U.S. Sentencing Guideline range is 8 to 14 months, based upon Offense Level 10 and Criminal History Category II. Since the applicable guideline range is in Zone B, the Sentencing Guidelines explicitly contemplate a sentence of probation with a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention. U.S.S.G. § 5C1.1(c)(3).

---

[2] This was before the shelter-in-place order for the COVID-19 pandemic, which has again curtailed him from leaving the home.

Although the Court must remain mindful of the Sentencing Guidelines recommendation, the advisory Guideline range is not presumptively reasonable and it cannot be given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991. A sentence of three years of probation best aligns with the goals and factors of section 3553(a) for the following reasons.

## II. The Nature and Circumstances of the Offense and Mr. Garcia's History Warrant a Downward Departure (18 U.S.C. § 3553(a)(1))

As detailed in the Background section above, the circumstances surrounding the offense and the characteristics of Mr. Garcia's difficult background counsel a downward variance from the advisory range. *See* 18 U.S.C. § 3553(a)(1). He was extremely poor, desperate, young, and lacked community support. He relates these circumstances not to minimize his conduct, but to provide context for it. Those circumstances have changed now that he is in the care of his aunt.

## III. A Downward Departure is Appropriate to Reflect the Severity of the Offense (18 U.S.C. § 3553(a)(2)(A))

Furthermore, a downward departure is warranted because this is a less serious offense compared with other federal crimes. *See* 18 U.S.C. § 3553(a)(2)(A). While Mr. Garcia takes responsibility for his criminal conduct in the instant offense and recognizes that selling any amount of drugs negatively impacts public health, the scope of his offense should be viewed in relation to other federal cases. The fact is that a hand-to-hand drug sale on the street with no aggravating factors is a minor offense compared to the vast majority of federal prosecutions, including drug prosecutions. For the most part, street-level drug offenses generally would not be prosecuted in federal court; to the contrary, federal drug cases normally present more serious facts, such as substantially larger quantities of controlled substances, possession and/or use of firearms or other weapons, or an organized drug trafficking operation. In comparison, the offense in Mr. Garcia's case is relatively minor.

### IV. Adequate Deterrence and Public Protection is Accomplished with a Sentence of Probation (18 U.S.C. § 3553(a)(2))

Mr. Garcia also respectfully contends that a sentence of three years probation, given his incarceration and home detention on pre-trial release, is sufficient deterrence in light of the fact that Mr. Garcia served just 2 days jail on his only other conviction. *See* 18 U.S.C. § 3553(a)(2)). Mr. Garcia has gone above and beyond to prove that he is rehabilitated through his impressive performance on pre-trial release. Mr. Garcia is young, he just "celebrated" his 22nd birthday, and he has clearly learned his lesson. Additionally, Mr. Garcia is expected to be detained and removed by immigration enforcement, providing additional deterrence and public protection.

### V. A Sentence of Three Years Probation is Appropriate Given the Sentences Available (18 U.S.C. § 3553(a)(3))

A sentence of three years of probation is warranted given the sentences available in light of Mr. Garcia's long period of home detention on pre-trial release. While probation may not be a typical sentence for a defendant facing deportation, Mr. Garcia would be statutorily required to receive three years of supervised release if sentenced to incarceration, and probation creates analogous obligations and responsibilities. He knows that if he re-enters the country illegally in the next three years, he faces both a new criminal charge *and* a probation violation. While Mr. Garcia requests a sentence of time served in the alternative, a sentence of probation appropriately rewards his remarkable performance on pre-trial release. A sentence of time served is, in practice, a guidelines sentence given U.S.S.G. § 5C1.1(c)(3), which allows for home detention in lieu of custody, because he has been in a combination of custody and home detention for a total of nearly eight months. Mr. Garcia does not deserve a guidelines sentence under section 3553(a). Furthermore, a sentence of time served will be recorded as a sentence of 2.5 months of custody, qualifying for two criminal history points, and this does not accurately reflect the history of Mr. Garcia's case, his success, or the mitigating factors. Mr. Garcia was deemed releasable on October 31, 2020, Dkt. 22, but there was no bed space available in the halfway house. He was finally released on December 10, 2020, when his aunt was able to take him in instead of continuing to wait for bed space. Since then, despite having every opportunity to flee knowing that he ultimately faces deportation and potentially additional imprisonment, Mr. Garcia has been *perfect*.

**CONCLUSION**

For the aforementioned reasons, Mr. Garcia respectfully requests the Court sentence him three years of probation. In the alternative, the Court should sentence Mr. Garcia to time served.

Dated:   May 7, 2020                                        Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
SOPHIA WHITING
Assistant Federal Public Defender